

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-21-00108-CV

**IN THE INTEREST OF B.K.C.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA00984
Honorable Mary Lou Alvarez, Judge Presiding

Opinion by: Patricia O. Alvarez, Justice

Sitting: Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: August 25, 2021

AFFIRMED; MOTION TO WITHDRAW DENIED

In this parental rights termination case, the trial court terminated Mom's and Dad's respective parental rights to their child B.K.C.[i] Dad's court-appointed appellate counsel filed an *Anders* brief, and Dad filed a pro se brief, but neither asserts an arguable ground to reverse any portion of the trial court's order. Mom challenges the legal and factual sufficiency of the evidence for the trial court's finding on the best interest of the child.

Because the evidence was legally and factually sufficient to support the trial court's findings under the heightened evidentiary standards, we affirm the trial court's order.

---

[i] We use aliases to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

**BACKGROUND**

Shortly after B.K.C. was born, the Department received a referral that Mom and B.K.C. tested positive for methadone and barbiturates at birth. About the same time, Dad, who has prior criminal convictions, was incarcerated on five felony counts, including aggravated assault, theft of a firearm, and felon in possession of a firearm.

Because Mom was taking methadone during her pregnancy, B.K.C. was born addicted to methadone, and he was placed in the NICU for a few days. When he was released, Mom took him to her ex-husband's home, and the next day to her mother's (Grandma's) apartment. At Grandma's apartment, after a dispute between Mom and Grandma, the police were called. When the police arrived, Mom and Grandma were outside the apartment arguing with each other. Mom appeared to be under the influence; her speech was slurred, and she stumbled and almost fell a few times.

While the police and the Department's investigator were at the scene, Mom was mostly "outside chain smoking and texting on her phone." The investigator found B.K.C., then less than three weeks old, in the apartment unattended; he was lying on an adult bed with no protective rails or guards, clothed only in a diaper. As the police and the Department discussed whether to remove B.K.C., Mom went into the apartment and went to sleep. Thereafter, B.K.C. was removed.

The Department created service plans for Mom and Dad. Mom engaged in services and completed some of them. Dad, who remained incarcerated during this case, also completed some services while he was incarcerated.

After a three-day bench trial on the merits, the trial court found by clear and convincing evidence that Mom's course of conduct met the grounds in Family Code subsection 161.001(b)(1)(D), Dad's course of conduct met the grounds in subsection 161.001(b)(1)(E), and that terminating Mom's and Dad's respective parental rights was in B.K.C.'s best interest. The

trial court terminated Mom's and Dad's parental rights to B.K.C. and appointed the Department as B.K.C.'s permanent managing conservator.

Mom and Dad filed separate notices of appeal. Mom challenges the legal and factual sufficiency of the evidence for the trial court's finding on the best interest of the child. Dad's court-appointed appellate counsel filed an *Anders* brief, and Dad filed a pro se brief. Before we address the parents' respective issues, we briefly recite the applicable evidentiary and appellate review standards.

### EVIDENCE REQUIRED, STANDARDS OF REVIEW

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

The evidentiary standard[1] the Department must meet and the statutory grounds[2] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[3] and factual[4] sufficiency standards of review. We apply these standards here.

### BEST INTEREST OF THE CHILD (MOM)

In her only issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in B.K.C.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## A.    Statutory Ground Finding

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.). The trial court found Mom "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Mom does not challenge that finding; instead, she challenges the best interest finding.

## B.    Best Interest of the Child Factors

The Family Code statutory factors[5] and the *Holley* factors[6] for best interest of the child are well known. Applying each standard of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interest of the child.

The trial court heard the following testimony regarding Mom's course of conduct, including, e.g., her history of substance abuse, her ability to parent, and her ability to provide for B.K.C.'s needs.

## C.    Mom's Ability to Meet Child's Needs

### 1.    Safe, Stable Housing

Under her service plan, Mom was required to establish and maintain stable housing for B.K.C. independent from Grandma because of Mom's and Grandma's heated arguments and Grandma's criminal history. Although Mom understood the plan requirements, she did not establish or maintain stable housing for B.K.C. Mom lived in four different apartments while B.K.C. was removed, and she sporadically moved back and forth between at least two of the apartments. One of the apartments was one she shared with Grandma, despite her plan's express requirement that she establish housing independent from Grandma. *See* TEX. FAM. CODE ANN.

§ 263.307(b)(11), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (G), (H)).

### 2. Providing for Child's Needs

Mom's plan also required her to obtain and maintain employment, but she did not. She admitted that in the two years since B.K.C.'s birth, she had not gotten a job because she was depressed and anxious, yet she was not seeking treatment for her depression and anxiety.

Mom has no separate source of income; she relies on her mother (Grandma) for her food, clothing, housing, and other necessities such as mandatory fees. For example, under her DWI probation, which began in December 2018, Mom was required to take some classes. But as of the date of trial, she still had not completed the classes because she said she could not afford the $145 class fees because she has been unemployed.

Mom testified that she was hired by a convenience store a few days before trial, but she did not have a start date, she did not know her starting wage, and she did not know what shift she would work. When Dad was asked about reuniting B.K.C. with Mom, he expressed his concern about Mom's ability to support herself and provide for B.K.C. He concluded it would not be in B.K.C.'s best interest to be reunited with Mom unless "she can prove that she can financially take care of [B.K.C.]." *See* TEX. FAM. CODE ANN. § 263.307(b)(11), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H), (I)).

### 3. Indicia of Parent-Child Relationship

When B.K.C. was only a few weeks old, Mom left B.K.C. unattended and unprotected on an adult bed while she was outside arguing with Grandma. Shortly thereafter, she went inside and went to sleep while authorities were deciding whether to remove her infant. After B.K.C. was removed, Mom initially visited him regularly. But in the six months before trial, Mom attended

only three of thirty-six available visits, and in the three months before trial, she did not visit her son even once.

Further, there was a family history of domestic violence. In unrelated incidents, Dad had assaulted Mom, Grandma was arrested for assault, and there were heated verbal conflicts between Mom and Grandma. When Mom was asked about what she learned from her domestic violence class, Mom had difficulty identifying the principles she was taught or expressing how she would use them to protect B.K.C. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H)).

### 4. *Untreated Substance Abuse*

Mom has two other children, and each is being raised by others because of Mom's history of drug abuse and inability to care for herself. In one case, Mom was convicted of DWI while having her child under age fifteen in her car, and that child no longer lives with her.

During counseling and at trial, Mom repeatedly denied having a substance abuse problem. But while B.K.C. was removed, she missed many drug tests scheduled by the Department, she once tested positive for alcohol, and she later tested positive for barbiturates. She was referred to an outpatient treatment program, but she failed to complete it. She also minimized the significance of her drug use on B.K.C.—who was born addicted to methadone. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

### 5. *Parenting Ability*

Mom readily admitted that Grandma is her only support system; she has no other family or friends to whom she can turn for support. When she was asked who would care for B.K.C. if she worked an overnight shift, Mom said Grandma would take care of him. Further, in violation of her service plan, Mom had her then-boyfriend with her when she had an unsupervised visit with B.K.C. despite her boyfriend's history of substance abuse. Mom denied that the boyfriend visited

B.K.C., but the Department saw the boyfriend's Facebook page—which showed a video of him with Mom and B.K.C. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

**D.  B.K.C.'s Placement**

The Department's conservatorship caseworker testified that from the time B.K.C. was removed—the day after he was released from the NICU—B.K.C. has lived with his foster parents, and they want to adopt him. The foster parents are taking good care of B.K.C.; they are ensuring all of B.K.C.'s needs are met, including his physical and emotional needs. B.K.C. is bonded to his foster parents, he is happy, and he can thrive in their home. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G)).

**E.  Ad Litem's Recommendation**

The child's ad litem expressed concern about Mom's lack of effort or interest in caring for B.K.C. The ad litem noted Mom decided to go to sleep while the authorities were deciding whether to remove her infant son, she delayed engaging in services for months, she did not complete some of her services, and she visited B.K.C. only three times in six months—and zero times in the three months before trial. The ad litem recommended that it was in B.K.C.'s best interest that both parents' rights be terminated so B.K.C. could continue to live with the foster family and be adopted by them. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G), (H)).

**F.  Sufficient Evidence**

The trial court could have believed the testimony that Mom, despite her repeated denials, had an ongoing substance abuse problem; she failed to complete her outpatient drug treatment program or domestic violence class; she failed to provide safe, stable housing; and she had no means to support herself or B.K.C. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d

at 844. It could also have believed the testimony that B.K.C. is doing well in his foster-to-adopt home and that his foster family was meeting his present needs and would meet his future needs sufficient for him to thrive. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in B.K.C.'s best interest for Mom's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interest-of-the-child finding with respect to Mom. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's sole issue.

### DAD'S APPEAL

#### A. *Anders* Brief

Dad's court-appointed counsel filed a motion to withdraw and a brief containing a professional evaluation of the record. The brief concludes there are no arguable grounds to reverse the termination order. The brief satisfies the requirements of *Anders v. California*, 386 U.S. 738 (1967). *See In re P.M.*, 520 S.W.3d 24, 27 n.10 (Tex. 2016) (per curiam) (applying *Anders* procedures to parental rights termination cases).

Counsel also represents that she provided Dad with a copy of the *Anders* brief, her motion to withdraw, and a form to request a free copy of the appellate record. She advised Dad of his right to review the record and file his own brief, which Dad did.

Having carefully reviewed the entire record, counsel's brief, and Dad's pro se brief, we conclude the evidence was legally and factually sufficient to support the trial court's findings with respect to Dad by clear and convincing evidence. We further conclude that there are no plausible grounds to reverse the termination order regarding Dad's parental rights.

**B.      Motion to Withdraw**

In her motion to withdraw, court-appointed appellate counsel does not assert any ground for withdrawal other than her conclusion that the appeal is frivolous.  Counsel's duty to Dad is not yet complete; the motion to withdraw is denied.  *See id.* at 27, n.11; *see also* TEX. FAM. CODE ANN. § 107.016(3); *In re A.M.*, 495 S.W.3d 573, 583 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("If the [parent] wishes to pursue an appeal to the Supreme Court of Texas, 'appointed counsel's obligations can be satisfied by filing a petition for review that satisfies the standards for an *Anders* brief.'" (quoting *In re P.M.*, 520 S.W.3d at 27–28)).

## CONCLUSION

For the reasons given above, we affirm the trial court's order, and we deny Dad's court-appointed appellate counsel's motion to withdraw.

Patricia O. Alvarez, Justice

---

[1] <u>Clear and Convincing Evidence</u>. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002).  The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2).  *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b).  The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation.  *In re D.M.*, 452 S.W.3d at 472.

[2] <u>Statutory Grounds for Termination</u>. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria.  *See* TEX. FAM. CODE ANN. § 161.001(b).  Here, the trial court found Mom's course of conduct met subsection (D) and Dad's course of conduct met subsection (E):

>   (D)  knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;
>   (E)  engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

*Id.* § 161.001(b)(1).

[3] <u>Legal Sufficiency</u>. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266).  If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient.  *See id.*

[4] <u>Factual Sufficiency</u>. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).  We must consider "whether disputed evidence is such that a

reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

[5] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[6] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).